SAM BENEVENTO, Esq.
Nevada Bar No. 003676
ROBERTSON & BENEVENTO
1945 East Warm Springs
Las Vegas, NV 89119
Phone: (702) 433-2000
Email: generaldelivery@nevlawyers.com
Attorney for Debtor(s)

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| **In Re:** | ) **Case No. BKS-09-19551 BAM** |
| | ) **Chapter 13** |
| **MICHAEL A. RIGA** | ) |
| | ) **Hearing Date:  September 3, 2009** |
| | ) **Hearing Time:  3:30 pm** |
| **Debtor(s).** | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## MOTION TO VALUE COLLATERAL, "STRIP OFF" AND MODIFY RIGHTS OF HSBC/MS PURSUANT TO 11 U.S.C. §506(a) AND §1322

Debtor, Michael A. Riga, by and through attorney Sam Benevento hereby move this Court

for its Order valuing collateral and modifying the rights of Creditor HSBC/MS  ("HSBC/MS")

pursuant to 11 U.S.C. §506(a), and §1322, and Bankruptcy Rules 3012 and 9014.  In furtherance

of this motion, Debtor states as follows:

1.     Debtor filed the above captioned Chapter 13, Case Number 09-19551BAM on June 5,

2009.

2.     On the petition date, Debtor owned real property located at 3791 Full Moon Drive Las

Vegas, NV  89115, legally described as:

Craig Park Unit 4, Plat Book 56, Page 48, Lot 133, Block 1

APN 140-06-312-036,

(hereinafter the "Property").

3.     The value of the Property was $57,000.00 as of the petition date.  See appraisal

ROBERTSON & BENEVENTO
1945 East Warm Springs Road
Las Vegas, Nevada 89119
Tel: (702) 433-2000    Fax: (702) 269-8139

attached hereto as Exhibit "1".

4.   As of the petition date, the Property was encumbered by a First Trust Deed in favor of HomeQ securing a note with a principal balance of $179,885.00.

5.   As of the petition date, no equity existed in the Property above the claim of HomeQ with respect to the First Trust Deed.

6.   HSBC/MS holds a Second Trust Deed securing a note with a principal balance of $75,351.00. This Second Trust Deed was wholly unsecured on the petition date and if the Property were to be sold at auction, HSBC/MS would receive nothing with respect to the Second Trust Deed. This Second Trust Deed was recorded in the Office of the Clark County Recorder as instrument 20060815-02930 on August 15, 2006.

7.   The Debtor therefore takes the position that HSBC/MS's note secured by Second Trust Deed is unsecured and should be reclassified as a general unsecured claim to receive pro rata with other general unsecured creditors through the Debtors' Chapter 13 Plan.

## LEGAL ARGUMENT

In *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002), the Court stated that a wholly unsecured lien holder's claim can be modified and reclassified as a general unsecured claim pursuant to 11 U.S.C. §506(a), despite the anti-modification language in §1322(b)(2). Specifically, the Court held:

> Section 506(a) divides creditors' claims into "secured...claims" and "unsecured claims." Although the conventional interpretation of "secured" might include any claim in which the creditor has a security interest in the debtor's property, § 506(a) makes clear that the status of a claim depends on the valuation of the property. An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim

> ...

ROBERTSON & BENEVENTO
1945 East Warm Springs Road
Las Vegas, Nevada 89119
Tel: (702) 433-2000    Fax: (702) 269-8139

To put it more simply, a claim such as a mortgage is not a "secured claim" to the extent that it exceeds the value of the property that secures it. Under the Bankruptcy Code, "secured claim" is thus a term of art; not every claim that is secured by a lien on property will be considered a "secured claim." Here, it is plain that PSB Lending's claim for the repayment of its loan is an unsecured claim, because its deed of trust is junior to the first deed of trust, and the value of the loan secured by the first deed of trust is greater than the value of the house.

Since HSBC/MS's Second Trust Deed is wholly unsecured (in that there is no equity above the first mortgage in the Property), this Court should reclassify HSBC/MS's second mortgage claim to a general unsecured claim to be receive pro rata with like unsecured creditors. HSBC/MS should also be stripped of its secured rights under State law and the recorded Second Trust Deed should be expunged from the county records to give effect to this Court's order.

Moreover, Debtor may bring a motion to "strip off" HSBC/MS's Second Trust Deed and is not required to file an adversary proceeding. See *In re Williams,* 166 B.R. 615 (Bankr.E.D.Va.1994), *In re Fuller,* 255 B.R. 300 (Bankr.W.D.Mich.2000), *In re Hoskins,* 262 B.R. 693 (Bankr.E.D.Mich.2001), *In re King,* 290 B.R. 641 (Bankr.C.D.Ill.2003), *In re Millspaugh,* 302 B.R. 90 (Bankr.D.Idaho 2003), *Dickey v. Ben. Fin. (In re Dickey)* 293 B.R. 360 (Bankr.M.D.Pa.2003), *In re Hill,* 304 B.R. 800 (Bankr.S.D.Ohio 2003); *In re Sadala* 294 B.R. 180 (Bankr.M.D.Fla.2003), *In re Fisher,* 289 B.R. 544 (Bankr.W.D.N.Y.2003), *In re Robert,* 313 B.R. 545 (Bankr.N.D.N.Y.2004), *In re Bennett,* 312 B.R. 843 (Bankr.W.D.Ky.2004).

WHEREFORE, Debtor prays that this Court:

1.    Find that HSBC/MS is not a holder of a lien on the Property with respect to the Second Trust Deed.

///

ROBERTSON & BENEVENTO
1945 East Warm Springs Road
Las Vegas, Nevada 89119
Tel: (702) 433-2000    Fax: (702) 269-8139

2.      Immediately avoid, "Strip off", extinguish and expunge from the County Recorder HSBC/MS's wholly unsecured Second Trust Deed from the Property pursuant to 11 U.S.C. Section 506(a);

3.      Reclassify HSBC/MS's claim as a general unsecured claim to be paid pro rata with other general unsecured creditors through the debtor's chapter 13 plan;

4.      Such other relief the Court finds appropriate.


Dated:   July ____, 2009



                                                     /s/ Sam Benevento, Esq.
                                                     Sam Benevento
                                                     Attorney for Debtor(s)

# APPRAISAL OF REAL PROPERTY

## LOCATED AT:
3791 Full Moon Drive
Craig Park Unit 4, Plat Book 56, Page 48, Lot 133, Block 1
Las Vegas, NV 89115-1241

## FOR:
Riga, Michael
3791 Full Moon Drive, Las Vegas, NV 89115

## AS OF:
July 10, 2009

## BY:
Travis T. Gliko

Desert Appraisal, LLC.

File No. 0083096 Page #4

# Uniform Residential Appraisal Report

File # 0083096

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 3791 Full Moon Drive | City Las Vegas | State NV | Zip Code 89115-1241 |
| Borrower Riga, Michael | Owner of Public Record Riga, Michael | County Clark | |

Legal Description  Craig Park Unit 4, Plat Book 56, Page 48, Lot 133, Block 1

| | | |
|---|---|---|
| Assessor's Parcel # 140-06-312-036 | Tax Year 2009 | R.E. Taxes $ 1,453.97 |
| Neighborhood Name Craig Park | Map Reference Metro Map 36-A2 | Census Tract 0047.15 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ N/A    ☐ PUD    HOA $ None  ☐ per year  ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Bankruptcy

Lender/Client  Riga, Michael            Address 3791 Full Moon Drive, Las Vegas, NV 89115

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?    ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).    Assessor, MLS

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.  N/A

Contract Price $ N/A    Date of Contract N/A    Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?    ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.    N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | PRICE | AGE | One-Unit | 60 % |
| Built-Up ☐ Over 75% ☒ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☐ In Balance ☒ Over Supply | $ (000) | (yrs) | 2-4 Unit | 5 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 30 Low | 1 | Multi-Family | 5 % |
| Neighborhood Boundaries    The Subjects' Market is bounded to the North by Craig Road, South by | | 180+ High | 39 | Commercial | 5 % |
| Las Vegas Blvd, East by Nellis Blvd, and West by Pecos Road. | | 75 Pred. | 13 | Other | 25 % |

Neighborhood Description    The subject is located within close proximity to recreational facilities as well as parks. Employment centers are close by along with schools and major highways. No adverse factors affecting marketability were noted at time of inspection. Commercial uses are located along main routes and have no negative impact.

Market Conditions (including support for the above conclusions)    Subject's market area activity is declining at this time. Prices appear to be softening due to over supply. Conventional financing is tightening, causing a smaller group of qualified buyers. Units typically sell within 1-90 day time frame if competitively priced and marketed properly. Loan discounts, interest buydowns, and concessions are typical.

| | | | |
|---|---|---|---|
| Dimensions Refer to Plat Map | Area 5,785 SF | Shape Irregular | View Average |

Specific Zoning Classification R-2    Zoning Description Medium Density Residential

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?    ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street Asphalt | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley None | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X    FEMA Map # 32003C2180E    FEMA Map Date 9/27/2002

Are the utilities and off-site improvements typical for the market area?    ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?    ☐ Yes ☒ No  If Yes, describe

The appraiser has no knowledge of any environmental conditions and is not an expert in environmental assessments.

| General Description | Foundation | Exterior Description    materials/condition | Interior    materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls  Conc./Avg | Floors  Cpt,Tile,Vinyl/Avg |
| # of Stories  1 | ☐ Full Basement ☐ Partial Basement | Exterior Walls  Stucco/Avg | Walls  Drywall/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area    None sq.ft. | Roof Surface  Tile/Avg | Trim/Finish  Wood/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish    N/A % | Gutters & Downspouts O/H/Avg | Bath Floor  Tile,Vinyl/Avg |
| Design (Style)  Conv./Avg | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type  Alum Slid/Avg | Bath Wainscot Fiberglass/Avg |
| Year Built  1994 | Evidence of ☐ Infestation None Obsv | Storm Sash/Insulated Thermal/Avg | Car Storage ☐ None |
| Effective Age (Yrs) 9 Years | ☐ Dampness ☐ Settlement | Screens  Yes/Avg | ☒ Driveway # of Cars 2 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface Concrete |
| ☐ Drop Stair ☐ Stairs | ☐ Other  Fuel Gas | ☒ Fireplace(s) # 1 ☒ Fence Block | ☒ Garage # of Cars 2 |
| ☐ Floor ☒ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck Cov ☐ Porch | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☒ Att. ☐ Det. ☐ Built-in |

Appliances ☐P Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐P Washer/Dryer ☐ Other (describe)

Finished area above grade contains:    6 Rooms    3 Bedrooms    2.00 Bath(s)    1,316 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).    40 gallon water heater, rear fenced yard. The subject is adequately maintained resulting an effective age of 9 years.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).    The subject is considered to be of average quality construction, in overall average condition. No external or functional inadequacies observed at time of inspection. Physical depreciation calculated using the age/life method. Roof cover appears to be in average condition. Floor plan is adequate.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?    ☐ Yes ☒ No  If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?    ☒ Yes ☐ No  If No, describe

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0083096 Page #5

# Uniform Residential Appraisal Report

File # 0083096

There are 10+- comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 55,000 to $ 134,900.

There are 31+- comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 49,000 to $ 165,000.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | +(-) $ Adjustment | COMPARABLE SALE # 2 | +(-) $ Adjustment | COMPARABLE SALE # 3 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 3791 Full Moon Drive Las Vegas, NV 89115-1241 | 3830 Light Year Drive Las Vegas | | 3732 Black Walnut Avenue Las Vegas | | 3718 Royal Fern Circle Las Vegas | |
| Proximity to Subject | | 0.09 miles NE | | 0.33 miles S | | 0.21 miles NW | |
| Sale Price | $ N/A | $ 68,000 | | $ 65,000 | | $ 58,000 | |
| Sale Price/Gross Liv. Area | $ N/A sq.ft. | $ 51.67 sq.ft. | | $ 50.98 sq.ft. | | $ 43.09 sq.ft. | |
| Data Source(s) | | MLS # 912819 DOM 49 | | MLS # 938205 DOM 117 | | MLS # 927492 DOM 10 | |
| Verification Source(s) | | APN # 140-06-312-010 | | APN # 140-07-114-046 | | APN # 140-06-314-009 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | FHA Finc. 2.7% Slr Cntrb | 0 | Cash No Slr Cntrb | | Cash No Slr Cntrb | |
| Date of Sale/Time | | 04/28/2009 | -8,160 | 06/26/2009 | -1,950 | 05/01/2009 | -4,350 |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5,785 SF | 5,736 SF | | 4,261 SF | | 5,003 SF | |
| View | Average | Average | | Average | | Average | |
| Design (Style) | Conv./Avg | Conv./Avg | | Conv./Avg | | Conv./Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 1994 | 1994 | | 2000 | | 1995 | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade Room Count | Total 6 / Bdrms. 3 / Baths 2.00 | Total 6 / Bdrms. 3 / Baths 2.00 | | Total 5 / Bdrms. 3 / Baths 2.00 | | Total 6 / Bdrms. 4 / Baths 2.00 | |
| Gross Living Area | 1,316 sq.ft. | 1,316 sq.ft. | 0 | 1,275 sq.ft. | 0 | 1,346 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | None N/A | None N/A | | None N/A | | None N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | GFWA/Cent | GFWA/Cent | | GFWA/Cent | | GFWA/Cent | |
| Energy Efficient Items | None Known | None Known | | None Known | | None Known | |
| Garage/Carport | Garage 2 | Garage 2 | | Garage 2 | | Garage 2 | |
| Porch/Patio/Deck | Covered Patio | Covered Patio | | Covered Patio | | No Patio | +1,500 |
| Fireplace | FP 1 | FP 1 | | No FP | +500 | No FP | |
| Int/Ext Features/Upgrades | Average | Superior | -3,000 | Superior | -3,000 | Inferior | +2,000 |
| Net Adjustment (Total) | | ☐+ ☒- $ | -11,160 | ☐+ ☒- $ | -4,450 | ☐+ ☒- $ | -850 |
| Adjusted Sale Price of Comparables | | Net Adj. 16.4 % Gross Adj. 16.4 % $ | 56,840 | Net Adj. 6.8 % Gross Adj. 8.4 % $ | 60,550 | Net Adj. 1.5 % Gross Adj. 13.5 % $ | 57,150 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   Assessor, MLS
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Assessor, MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 02/03/2009 $94,600 (TD) | 04/23/2009 | 02/20/2009 |
| Price of Prior Sale/Transfer | None Noted/3 yrs | 03/01/2007 $239,000 | $85,000 (TD) | $87,047 (TD) |
| Data Source(s) | Assessor | Assessor | Assessor | Assessor |
| Effective Date of Data Source(s) | 07/10/2009 | 07/10/2009 | 07/10/2009 | 07/10/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales    The subject and sales has not been sold within the last 3 years except as as given in the grid of the sales comparison approach.

Summary of Sales Comparison Approach    The subject's design, size, age, and maintenance level is compatible with the neighborhood. The closed sales displayed in the analysis were considered to be the most comparable to the subject and the best indicators of value for the subject. They are all considered reasonable purchase alternatives. A reasonable alternative reflects the economic principle of "substitution" whereby a well informed or well advised purchaser will pay no more for a property than the cost of acquiring an equally desirable substitute. Dollar adjustments are an estimate reflecting the market's reaction to the difference in the properties, not necessarily the cost of the difference. A "none noted" amenity entry indicates that the appraiser could not ascertain the existance or non-existance of that amenity and accordingly no adjustments were made. Sites typical in size and utility were not adjusted for their square foot differences. In estimating market value each comparable was given equal consideration after market recognized adjustments were made.

Indicated Value by Sales Comparison Approach $ 57,000

Indicated Value by: Sales Comparison Approach $ 57,000    Cost Approach (if developed) $ Not Develop    Income Approach (if developed) $ N/A

Greatest consideration on Sales Comparison Analysis as the action of buyers and sellers are reflected therein. The Cost Analysis is not applicable with the exception of FHA financing of homes new to 12 months old. When provided, it is per lender request or information only.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: This appraisal is made "As Is" and is 100% complete. No personal property is included in the final value estimate.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 57,000 , as of July 10, 2009 , which is the date of inspection and the effective date of this appraisal.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0083096[ Page #6]

# Uniform Residential Appraisal Report
File # 0083096

**COMPARABLE SALES AND LISTINGS:**

All sales and listing #1 utilized within the context of this report are bank owned properties. This is unavoidable and not uncommon to utilize bank sales and listings due to the declining market within the subjects market area at time of inspection. The sales have been given negative time adjustments due to their prior contract dates, the subjects declining market, and lower available listings and pendings within the subjects market area.

**ELECTRONIC SIGNATURE:**

The electronic signature, which has been securely affixed to this report, carries the same level of authenticity as a traditional signature.

**ADDITIONAL COMMENTS:**

This appraisal report is not a home inspection, the appraiser only performed a visual inspection of accessible areas and that the appraisal cannot be relied upon to disclose conditions and/or defects in the property.

**MARKET CONDITIONS:**

Subject's market area activity is declining at this time. Prices appear to be softening due to over supply. Conventional financing is tightening, causing a smaller group of qualified buyers. Units typically sell within 1-90 day time frame if competitively priced and marketed properly. Loan discounts, interest buydowns, and concessions are typical.

**"Greater Las Vegas Association of Realtors Reports"**

The inventory of homes declined 9.3% from a year ago to 21,181; leaving an estimated seven month supply. Realtors sold 3,255 single family homes during the month of May, a 60.7% increase from a year ago. The median price was $140,000, down 40.9% from May 2008. The median price dipped 1.2%, or $1,720.00 from the previous month, the smallest decline since November 2007. For condos and townhomes, the median price was $65,000, down 53.4% from a year ago, but up 8% from a month ago. Inventory grew 2.3% to 5,572. Foreclosure properties account for about 80% of Las Vegas home sales. Realtors took 4,211 new listings in May at an average price of $150,000, down 3.8% from the previous month and 36.2% from a year ago.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW

| | | |
|---|---|---|
| Source of cost data | OPINION OF SITE VALUE .......................................... =$ |
| Quality rating from cost service    Effective date of cost data | DWELLING        Sq.Ft. @ $ ............ =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Sq.Ft. @ $ ............ =$ |
| | ............ =$ |
| | Garage/Carport        Sq.Ft. @ $ ............ =$ |
| | Total Estimate of Cost-New ............ =$ |
| | Less        Physical    Functional    External |
| | Depreciation |
| | Depreciated Cost of Improvements ............ =$ |
| | "As-is" Value of Site Improvements ............ =$ |

Depreciation =$( )

Estimated Remaining Economic Life (HUD and VA only)        Years    **INDICATED VALUE BY COST APPROACH** ............ =$

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $    N/A    X Gross Rent Multiplier    N/A    = $    N/A    Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)    N/A

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No    Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No If Yes, date of conversion.

Does the project contain any multi-dwelling units? ☐ Yes ☐ No Data Source

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 70 March 2005        Page 3 of 6        Fannie Mae Form 1004 March 2005

File No. 0083096 Page #7

# Uniform Residential Appraisal Report          File # 0083096

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0083096 Page #8

## Uniform Residential Appraisal Report    File # 0083096

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Uniform Residential Appraisal Report    File # 0083096

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Travis T. Gliko | Name |
| Company Name  Desert Appraisals, LLC | Company Name |
| Company Address  6295 McLeod Drive, Suite 18, Las Vegas, NV 89120 | Company Address |
| Telephone Number  (702) 730-2989 | Telephone Number |
| Email Address  travis@desertappraisalsnv.com | Email Address |
| Date of Signature and Report  July 10, 2009 | Date of Signature |
| Effective Date of Appraisal  July 10, 2009 | State Certification # |
| State Certification #  A.0005721-CR | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State  NV | |
| Expiration Date of Certification or License  12/31/2010 | **SUBJECT PROPERTY** |
| | ☐ Did not inspect subject property |
| **ADDRESS OF PROPERTY APPRAISED** | ☐ Did inspect exterior of subject property from street |
| 3791 Full Moon Drive | Date of Inspection |
| Las Vegas, NV 89115-1241 | ☐ Did inspect interior and exterior of subject property |
| APPRAISED VALUE OF SUBJECT PROPERTY $  57,000 | Date of Inspection |
| **LENDER/CLIENT** | |
| Name | **COMPARABLE SALES** |
| Company Name  Riga, Michael | |
| Company Address  3791 Full Moon Drive, Las Vegas, NV 89115 | ☐ Did not inspect exterior of comparable sales from street |
| | ☐ Did inspect exterior of comparable sales from street |
| Email Address | Date of Inspection |

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report

File # 0083096

| FEATURE | SUBJECT | COMPARABLE SALE #4 | +(-) $ Adjustment | COMPARABLE SALE #5 | +(-) $ Adjustment | COMPARABLE SALE #6 | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Address | 3791 Full Moon Drive Las Vegas, NV 89115-1241 | 3941 Blue Wave Drive Las Vegas | | 3823 Aspen Springs Avenue Las Vegas | | 3946 Via Lucia Drive Las Vegas | |
| Proximity to Subject | | 0.49 miles SW | | 0.44 miles S | | 0.50 miles SW | |
| Sale Price | $ N/A | $ 60,000 | | $ 64,900 | | $ 60,000 | |
| Sale Price/Gross Liv. Area | $ N/A sq.ft. | $ 48.12 sq.ft. | | $ 50.90 sq.ft. | | $ 44.61 sq.ft. | |
| Data Source(s) | | MLS # 931379 DOM 3 | | MLS # 928420 DOM 10 | | MLS # 942801 DOM 32 | |
| Verification Source(s) | | APN # 140-07-11-044 | | APN # 140-07-113-051 | | APN # 140-07-112-050 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | Cash No Slr Cntrb | | FHA Finc. Unknown | | N/A N/A | |
| Date of Sale/Time | | 05/26/2009 | -3,600 | Pending Sale | | Active Listing | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5,785 SF | 4,126 SF | | 4,415 SF | | 4,047 SF | |
| View | Average | Average | | Average | | Average | |
| Design (Style) | Conv./Avg | Conv./Avg | | Conv./Avg | | Conv./Avg | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 1994 | 1997 | | 2000 | | 1998 | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade Room Count | Total 6 / Bdrms. 3 / Baths 2.00 | Total 5 / Bdrms. 3 / Baths 2.00 | | Total 5 / Bdrms. 3 / Baths 2.00 | | Total 5 / Bdrms. 3 / Baths 2.00 | |
| Gross Living Area | 1,316 sq.ft. | 1,247 sq.ft. | 0 | 1,275 sq.ft. | 0 | 1,345 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | None N/A | None N/A | | None N/A | | None N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | GFWA/Cent | GFWA/Cent | | GFWA/Cent | | GFWA/Cent | |
| Energy Efficient Items | None Known | None Known | | None Known | | None Known | |
| Garage/Carport | Garage 2 | Garage 2 | | Garage 2 | | Garage 2 | |
| Porch/Patio/Deck | Covered Patio | Covered Patio | | Concrete Patio | +1,000 | Concrete Patio | +1,000 |
| Fireplace | FP 1 | No FP | +500 | No FP | +500 | FP 1 | |
| Int/Ext Features/Upgrades | Average | Superior | -4,500 | Superior | -3,500 | Superior | -2,500 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -7,600 | ☐ + ☒ - $ | -2,000 | ☐ + ☒ - $ | -1,500 |
| Adjusted Sale Price of Comparables | | Net Adj. 12.7 % Gross Adj. 14.3 % $ | 52,400 | Net Adj. 3.1 % Gross Adj. 7.7 % $ | 62,900 | Net Adj. 2.5 % Gross Adj. 5.8 % $ | 58,500 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 04/01/2009 | 03/31/2009 $177,525 (TD) | 12/28/2006 |
| Price of Prior Sale/Transfer | None Noted/3 yrs | $53,068 (TD) | 08/10/2006 $204,554 | $235,000 |
| Data Source(s) | Assessor | Assessor | Assessor | Assessor |
| Effective Date of Data Source(s) | 07/10/2009 | 07/10/2009 | 07/10/2009 | 07/10/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Freddie Mac Form 70 March 2005

Fannie Mae Form 1004 March 2005

# APPRAISER CERTIFICATE

## STATE OF NEVADA DEPARTMENT OF BUSINESS AND INDUSTRY

**NOT TRANSFERABLE**　　　　　　**REAL ESTATE DIVISION**　　　　　　**NOT TRANSFERABLE**

This is to Certify That : TRAVIS GLIKO　　　　　　　　Certificate Number: A.0005721-CR

Is duly authorized to act as a CERTIFIED RESIDENTIAL APPRAISER from the issue date to the expiration date at the business address stated here in, unless the certificate is sooner revoked, cancelled, withdrawn, or invalidated.

Issue Date: December 09, 2008　　　　　　　　Expire Date: December 31, 2010

In witness whereof, THE DEPARTMENT OF BUSINESS AND INDUSTRY, REAL ESTATE DIVISION, by virtue of the authority vested in it by Chapter 645C of the Nevada Revised Statues, has caused this Certificate to be issued with its Seal printed thereon. This certificate must be conspicuously displayed in place of business.

FOR: DESERT APPRAISALS LLC　　　　　　　REAL ESTATE DIVISION
　　　6295 MCLEOD DR STE 18
　　　LAS VEGAS, NV 89120

　　　　　　　　　　　　　　　ANN M McDERMOTT
　　　　　　　　　　　　　　　*Administrator*

File No. 0083096  Page #12

**Building Sketch**

| Borrower/Client | Riga, Michael | | | | |
|---|---|---|---|---|---|
| Property Address | 3791 Full Moon Drive | | | | |
| City | Las Vegas | County | Clark | State NV | Zip Code 89115-1241 |
| Lender | Riga, Michael | | | | |



Sketch by Apex IV™

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1316.0 | 1316.0 |
| | | | |
| Net LIVABLE Area | (Rounded) | | 1316 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 23.0  x  40.0 | | 920.0 |
| 11.0  x  36.0 | | 396.0 |
| 2 Items | (Rounded) | 1316 |

File No. 0083096 Page #13

**Plat Map**

| Borrower/Client | Riga, Michael | | | | |
|---|---|---|---|---|---|
| Property Address | 3791 Full Moon Drive | | | | |
| City | Las Vegas | County Clark | | State NV | Zip Code 89115-1241 |
| Lender | Riga, Michael | | | | |



File No. 0083096  Page #14

## Location Map

| Borrower/Client | Riga, Michael | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3791 Full Moon Drive | | | | | |
| City | Las Vegas | County | Clark | State | NV | Zip Code 89115-1241 |
| Lender | Riga, Michael | | | | | |



File No. 0083096  Page #15

## Subject Photo Page

| Borrower/Client | Riga, Michael | | | | |
|---|---|---|---|---|---|
| Property Address | 3791 Full Moon Drive | | | | |
| City | Las Vegas | County Clark | | State NV | Zip Code 89115-1241 |
| Lender | Riga, Michael | | | | |



**Subject Front**

3791 Full Moon Drive
Sales Price          N/A
Gross Living Area    1,316
Total Rooms          6
Total Bedrooms       3
Total Bathrooms      2.00
Location             Suburban
View                 Average
Site                 5,785 SF
Quality              Average
Age                  1994



**Subject Rear**



**Subject Street**

Form PIC3x5.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0083096 Page #16

## PHOTOGRAPH ADDENDUM

| Borrower/Client | Riga, Michael | | | | |
|---|---|---|---|---|---|
| Property Address | 3791 Full Moon Drive | | | | |
| City | Las Vegas | County Clark | | State NV | Zip Code 89115-1241 |
| Lender | Riga, Michael | | | | |



Living Room



Kitchen



Dining Area

Form GPIC3X5 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 0083096 Page #17

## Comparable Photo Page

| | | | | | |
|---|---|---|---|---|---|
| Borrower/Client | Riga, Michael | | | | |
| Property Address | 3791 Full Moon Drive | | | | |
| City | Las Vegas | County  Clark | | State  NV | Zip Code  89115-1241 |
| Lender | Riga, Michael | | | | |



### Comparable 1
3830 Light Year Drive
| | |
|---|---|
| Prox. to Subject | 0.09 miles NE |
| Sale Price | 68,000 |
| Gross Living Area | 1,316 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Suburban |
| View | Average |
| Site | 5,736 SF |
| Quality | Average |
| Age | 1994 |



### Comparable 2
3732 Black Walnut Avenue
| | |
|---|---|
| Prox. to Subject | 0.33 miles S |
| Sale Price | 65,000 |
| Gross Living Area | 1,275 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Suburban |
| View | Average |
| Site | 4,261 SF |
| Quality | Average |
| Age | 2000 |



### Comparable 3
3718 Royal Fern Circle
| | |
|---|---|
| Prox. to Subject | 0.21 miles NW |
| Sale Price | 58,000 |
| Gross Living Area | 1,346 |
| Total Rooms | 6 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.00 |
| Location | Suburban |
| View | Average |
| Site | 5,003 SF |
| Quality | Average |
| Age | 1995 |

File No. 0083096 Page #18

## Comparable Photo Page

| Borrower/Client | Riga, Michael | | | | |
|---|---|---|---|---|---|
| Property Address | 3791 Full Moon Drive | | | | |
| City | Las Vegas | County | Clark | State NV | Zip Code 89115-1241 |
| Lender | Riga, Michael | | | | |



### Comparable 4
3941 Blue Wave Drive
| | |
|---|---|
| Prox. to Subject | 0.49 miles SW |
| Sale Price | 60,000 |
| Gross Living Area | 1,247 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Suburban |
| View | Average |
| Site | 4,126 SF |
| Quality | Average |
| Age | 1997 |



### Comparable 5
3823 Aspen Springs Avenue
| | |
|---|---|
| Prox. to Subject | 0.44 miles S |
| Sale Price | 64,900 |
| Gross Living Area | 1,275 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Suburban |
| View | Average |
| Site | 4,415 SF |
| Quality | Average |
| Age | 2000 |



### Comparable 6
3946 Via Lucia Drive
| | |
|---|---|
| Prox. to Subject | 0.50 miles SW |
| Sale Price | 60,000 |
| Gross Living Area | 1,345 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.00 |
| Location | Suburban |
| View | Average |
| Site | 4,047 SF |
| Quality | Average |
| Age | 1998 |